### SKINNER *et ux.* v. SCOTT *et ux.*

No. 892.   Opinion Filed July 11, 1911.

1.  **CANCELLATION OF INSTRUMENTS—Fraud—Delay in Action —Evidence to Explain.** Where plaintiffs, who seek the aid of a court of equity to rescind a contract alleged to have been procured by fraud, have been guilty of great and unreasonable delay after discovery of the fraud in instituting and prosecuting their action, they must not only allege the impediments which prevented them from instituting and prosecuting their action, but must also produce evidence explaining their delay; and if they fail to do so, the court, upon its own motion, may refuse to grant relief.

2.  **SAME—Laches—Dismissal.** Where plaintiffs wait six months after discovery of an alleged fraud to institute an action to be relieved therefrom, and, after the action has been pending for two and a half years, suffer the same to be dismissed for want of prosecution, and no steps are taken to reinstate the cause until the lapse of another three and a half years, and, after a motion to reinstate is denied, permit four months to expire before instituting a second action, and there is no evidence to explain said delays, it was not error for the trial court to deny plaintiffs relief and dismiss their action on account of their laches.

3.  **CONTRACTS—Validity—Fraud—Waiver.** Contracts induced by fraud are not void, but voidable. The defrauded party may elect, with knowledge of the facts concerning the fraud, to treat the contract as valid. If he does so, he cannot thereafter change his position and insist that it is invalid.

(Syllabus by the Court.)

*Error from District Court, Logan County; D. M. Tibbetts, Judge Pro Tempore.*

Action by Rettie Skinner and W. J. Skinner against William Scott and wife. Judgment for defendants, and plaintiffs bring error. Affirmed.

*Buckner & Buckner,* for plaintiffs in error.

*C. G. Hornor,.* for defendants in error.

HAYES, J. This action was originally begun in the district court of Logan county by plaintiffs in error before the admission of the state, where it was pending at the time of the admission of the state, and was thereupon transferred to the district court of the state for said county. Plaintiffs in error seek by this proceeding to obtain a decree of court rescinding and setting aside a certain contract between them and defendant in error, Wm. Scott, whereby they purchased from said Wm. Scott a certain patent right, and to have canceled and set aside a deed of conveyance executed by them to said Scott, whereby they conveyed to Scott a certain quarter section of land described in their petition and belonging to plaintiff in error, Rettie Skinner, and to have the title thereto quieted and confirmed in said Rettie Skinner. The cause was tried in the court below to the court, without a jury, who made and filed in writing his separate findings of fact and conclusions of law, upon which judgment was rendered in favor of defendants in error, dismissing the cause. It is to reverse that judgment that this proceeding is prosecuted.

Plaintiffs in error will hereafter be referred to as plaintiffs. Plaintiffs' petition is a voluminous pleading; but it will be necessary to give only an epitome of the facts therein alleged. On December 7, 1898, plaintiff, Rettie Skinner, who is the wife of her coplaintiff, was the owner in fee simple of a certain quarter section of land, located in Logan county in this state, and more particularly described in her petition. In all matters which have become involved in this action her husband and coplaintiff acted as her agent. On above-mentioned date, they allege that defendant, Wm. Scott, sold to them the right to a patented improvement on window screens, of which he claimed to be the inventor, patentee, and owner; that by the contract of sale Scott conveyed

to them the exclusive right to manufacture and sell said patent in all the counties of the state, except two, and in certain counties of the state of Texas. As a consideration therefor, plaintiffs conveyed to Scott the land in controversy, the separate property of plaintiff, Rettie Skinner. Plaintiffs allege that said contract was induced by wilful, false, and fraudulent representations on the part of Scott, by which plaintiffs were deceived and relying on which they executed the contract and conveyed said land, and without which they would not have done so. It is unnecessary to set out in detail the alleged fraudulent acts of Scott. Plaintiffs allege that they discovered the fraud on or about the first day of April, 1899; that they were unable, on account of not having sufficient money, to commence an action at that time to have the contract rescinded; but that they did, on October 2, 1899, file an action for said purpose; and that thereafter, at the February term, 1902, of the court in which said action was pending, the cause was dismissed by the court, on the ground and for the reason of failure of plaintiffs to prosecute their action. They then allege facts and circumstances for the purpose of showing why said action was not prosecuted diligently, which facts alleged, concisely stated, are that they were deceived by their attorney as to the status of said cause, and that the dismissal thereof was caused by his negligence and inattention thereto, in that he depended upon certain other attorneys whom he had associated with him in the cause, who had withdrawn therefrom, and failed to give the cause attention when it was called by the court. They allege that they did not discover that the cause had been dismissed until November, 1904, at which time they employed other counsel, but no further action was taken in the matter until the 5th day of October, 1905, at which time they filed an application to reinstate the dismissed cause. They allege, as an explanation for the delay in filing this motion to reinstate, that Scott was a nonresident of the territory, whose exact place of residence was to them unknown, and to ascertain which would require them to spend a large amount of money and time, in order to procure service of notice upon him of a motion to reinstate

the cause. They allege that on the 12th day of June, 1902, Scott made, executed, and delivered to one L. C. Shepherd a certain warranty deed, whereby he purported to convey the land in controversy to the said Shepherd; but they allege that said transfer was made without consideration; and that Shepherd afterwards, without consideration, conveyed said land to defendant, Isabella Scott, wife of her codefendant, Wm. Scott; and that both of said conveyances were made for the purpose of defrauding plaintiffs and hindering and delaying them in the prosecution of this action. They allege that both Shepherd and Isabella Scott had, at all times, full knowledge of the facts and circumstances alleged in their petition, and knew that Wm. Scott had cheated and defrauded them out of their land.

On the first day of November, 1905, their motion to reinstate was denied by the court. Thereupon, plaintiffs took no further steps in the matter until February 2, 1906, at which time they instituted this action in the court below. The court, by his special findings, found all the issues of fact relative to the alleged fraud charged to have been committed by Wm. Scott, against plaintiffs, and in favor of defendants. By his eleventh finding of fact, he found that on the 18th day of May, 1899, after plaintiffs had made a trial of the patent right purchased from Scott and concluded that they could not make use of it, plaintiff, Rettie Skinner, wrote to Scott a letter by which she requested Scott to remit her $5 in lieu of certain fruit on the farm traded by her to Scott, which she claimed according to the contract between them she was to have; and in that letter she stated that what she got out of the fruit off the farm would be all that she would get out of the farm, as she regarded the window screen worthless. The circumstances out of which this letter arose were that Scott, after purchasing the farm, rented it to certain tenants, who claimed that Scott gave them the right to the fruit thereon. Mrs. Skinner claimed that in the contract of sale the fruit was reserved to her; and it was to adjust these contentions that she wrote the letter to Scott demanding under the contract pay for the fruit, if the same was kept by his tenants. By the 12th find-

ing of fact, the court found that in October, 1899, plaintiffs commenced this action, and that the same was pending until the 28th day of March, 1902, when it was dismissed by the court; and that thereafter, on the 8th day of October, 1905, plaintiffs made application to reinstate the cause, which was denied on the first day of November, 1905; and that on the 7th day of February, 1906, they filed their petition in this cause; that the evidence does not show what reason they had for not prosecuting their former action more diligently or for not commencing their present action at an earlier date. The court thereupon, upon conclusions of law, based upon findings of fact, not only that the evidence had failed to show fraud on the part of Scott, but also that plaintiffs had, first, after discovery of the fraud, ratified the contract; and, second, because of delay and laches in the prosecution of their action, which they had not by competent evidence explained; and, third, because third parties have so intervened that it would be impossible for the court to grant relief—concluded that the judgment should be for the defendants, and accordingly so ordered. Thereafter a motion for a new trial was filed, in which plaintiffs set up as a ground for a new trial, newly discovered evidence. The newly discovered evidence all bears upon the issue of fraud, and the trial court therefore, in rendering a decision upon the motion for a new trial, while stating that he was of the opinion that the newly discovered evidence set out in the motion was sufficient to entitle plaintiffs to a new trial upon the issue of fraud, stated that because of plaintiffs' acts in ratifying the contract after discovery of the fraud and their laches in prosecuting their action for rescission of the contract, a new trial could not result differently, and the motion therefore should be denied.

Counsel for plaintiffs concede in their brief that this proceeding properly presents only two questions for consideration, which are the questions of ratification and laches. We shall consider these questions in the inverse order here stated. The doctrine of laches is peculiar to courts of equity. It exists independent of the statutes of limitations; and an action may be barred on

account of the laches of the claimant for a period shorter than the statutory period of limitation.

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. When these are wanting, the court is passive and does nothing." (*Smith v. Clay*, 2 Ambr. 645.)

The doctrine of the foregoing excerpt states the rule followed by all courts of equity.

"In *Badger v. Badger,* 69 U. S. 95, it was said that a party who makes an appeal to the conscience of the chancellor should set forth in his bill, specifically, what were the impediments to an earlier prosecution of his claim. How he came to be so long ignorant of his rights and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill. Otherwise the chancellor may justly refuse to consider his case on his own showing without inquiring whether there is a demurrer or formal plea of the statute of limitations." (*Richards v. Mackall,* 124 U. S. 183.)

Plaintiff must not only allege the impediments which have prevented him from the prompt prosecution of the same, but he must also produce evidence explaining his delay; and if he fails to do so at the hearing, the court may, upon its motion, refuse to grant relief (*Sullivan v. Portland Railroad Co.,* 85 U. S. 897; *Willard v. Wood,* 164 U. S. 524); and the mere institution of a suit, where there is want of diligence in prosecuting it, does not relieve complainant from the charges of laches. *Johnson v. Mining Co.,* 148 U. S. 360; *Willard v. Wood, supra.* The time which, on account of a person's laches, will constitute a bar to an action is subject to no arbitrary rule, but varies and is determined by the circumstances of each case. *Alsop v. Ricker,* 155 U. S. 448. That this doctrine of laches has application to actions for rescission, is stated in the following language in the 24th Am. & Eng. Encyc. of Law, p. 625:

"The complainant must have been diligent in seeking his remedy, and must not have slept upon his rights; and if with knowledge of the facts which give him a right to seek rescission

he has been guilty of an unreasonable and unnecessary delay in availing himself of his remedy, a court of equity will deny him relief. Similarly any conduct of the complainant sufficient to show an election by him to affirm the contract or abide by its obligations will ordinarily be sufficient to bar his right to rescission."

Complainants in this case discovered the fraud of which they complain six months before the institution of their first action; and before the institution thereof they had by ther acts indicated, after they had discovered the fraud, that they intended to stand upon the contract, of which we shall speak further later. The action originally instituted, after pending upon the docket for almost two and a half years, was dismissed for want of prosecution. No appeal was taken from this order of the court, and no further attention was given to the cause for a period of about three and a half years, when a motion to reinstate was made and a hearing thereon had before the court. The trial court, with all the facts before it, whatever they may have been, was not sufficiently impressed with plaintiffs' explanation of their delays to grant the motion to reinstate. These actions of the court in which the cause was pending, and who must have been acquainted with all the facts pertaining to plaintiffs' diligence or want of diligence, should have their weight with the court in this proceeding. After the motion to reinstate had been overruled, another four months expired before the institution of the present action. On account of their numerous delays and failure to prosecute promptly, and with diligence, the former action instituted by them, plaintiffs' standing before the court in this proceeding is the same as if no action had been begun. The trial court has found, and the record supports that finding, that there is want of evidence to explain the delay in instituting this action and the laches in prosecuting the former one. It is true that in their petition plaintiffs have alleged facts for the purpose of freeing them of the charge of laches. Without passing upon whether the facts alleged in their petition, if true, constitute a valid excuse for their delay, the allegation thereof alone is not sufficient. Plaintiffs should have followed up such allegations

by the introduction of competent evidence in support thereof and by showing that their delay and neglect had resulted from causes which the law recognizes as sufficient to excuse them from the charge of laches. In the interim of approximately seven years between the discovery of the cause of action by plaintiffs and their institution of this proceeding, the land involved has doubled in value.

"Where property in question has greatly increased in value, unexplained delay on the part of the complainant will be fatal to his case. * * *" . (18 Am. & Eng. Encyc. of Law, p. 102.)

At the time Mrs. Skinner conveyed this property to Scott there existed thereon a mortgage on which there was past due interest. The payment of this mortgage and interest was assumed by Scott. He paid the interest accrued and thereafter accruing thereon, and the principal secured by the mortgage has subsequently been paid either by Scott or his grantees; and no tender has been made before or since the institution of this proceeding to return to Scott the money paid out by him. In any event, if plaintiffs seek equity, they must do equity, and they could not be permitted to stand by, after they had discovered the fraud of which they now complain, and permit Scott or others for him to pay off liens upon the property in order to save the title to himself without refunding or offering to refund to Scott the expenses incurred or amount paid out by him.

On the other question, it may be said that after the alleged fraud had been discovered by plaintiffs, Mrs. Skinner, the owner of the land, in the month of May, after the discovery of the fraud in April of the same year, wrote to Scott, insisting upon certain of her rights under the contract between them. Scott recognized her claims and settled with her therefor by making a cash payment in lieu of the fruit which she claimed was reserved to her under the contract of sale. Contracts induced by fraud are not void, but voidable. The defrauded party may elect, with knowledge of the facts concerning the fraud, to treat the contract as valid. If he does so, he cannot thereafter change his position and insist that it is invalid. Page on Contracts, vol.

1, § 139.   After the discovery of the alleged fraud, plaintiffs did not demand a rescission of the contract, but, on the other hand, they wrote to Scott, insisting upon their rights under the contract, and received money in settlement of their claims thereunder, and by reason of such act are now precluded from maintaining an action to rescind the contract.   *Evans v. Montgomery,* 50 Ia. 325; *Ayer v. Mitchell,* 11 Miss. 683; *Bement v. Laydon,* 66 Ind. 165.

Some of the other special findings made by the court, which are not affected by the newly discovered evidence, are also sufficient to justify and require the judgment entered by the trial court; but it is not necessary to consider them here.   For the foregoing reasons, we think the trial court committed no error in holding that this is a case in which equity should not interfere.

The judgment of the court below is affirmed.

All the Justices concur.