## UNGER v. WILLIBEY.

No. 19225. Opinion Filed Nov. 12, 1929.

Rehearing Denied Feb. 18, 1930.

Commissioners' Opinion, Division No. 2.

Glenn O. Young, for plaintiff in error.

Hughes & Ellinghausen, for defendant in error.

HERR, C. This is an action by E. R. Unger against G. R. Willibey, brought in the district court of Creek county to recover on a promissory note. The note was originally executed by plaintiff and defendant to the American National Bank of Sapulpa. It is plaintiff's contention that he executed the note as surety only and that he was compelled to and did pay the same to the bank, and that defendant is, therefore, liable to him. The defense is that plaintiff was, in fact, the principal on the note and that defendant was a surety only.

The evidence offered by defendant to establish this defense is as follows:

Sometime in March, 1923, plaintiff, on be-

half of the Conservative Loan & Trust Company, solicited from defendant an application for a loan in the sum of $4,000. Defendant agreed to take this loan, and shortly thereafter signed an application to the Conservative Loan & Trust Company for the same. This application was approved by said company and a note for this sum and a mortgage to secure the same were executed and delivered by defendant to said loan company. This mortgage was immediately placed of record by said loan company and the note and mortgage by it sold and transferred to the Knights of Maccabees. It further appears that the loan company was slow in making remittance on this loan, and on the 18th day of June, 1923, defendant made application to the National Building & Loan Association of Pawhuska for this loan, and offered as security the same property upon which the Conservative Loan & Trust Company held its mortgage and which mortgage was at said time held and owned by the Maccabees. The evidence offered on behalf of defendant further shows that plaintiff, upon ascertaining that defendant had made a second application for a loan, induced him to cancel the same; that, in order to induce such cancellation, he stated he would see that defendant would receive the money at once from the Shawnee people, meaning the Conservative Loan & Trust Company at Shawnee, and that he would guarantee that defendant would get his money at once.

Defendant further testified that, relying on this statement, he canceled his application for a loan with the National Building & Loan Association, and that shortly thereafter the Conservative Loan & Trust Company forwarded its draft executed to defendant and plaintiff jointly for the amount of the loan. This draft was properly indorsed by the parties and presented to the American National Bank at Sapulpa for payment, which draft was by said bank paid and the proceeds thereof deposited in said bank to the credit of defendant. It further appears that said sum was subsequently withdrawn therefrom upon checks issued against the same by defendant. It is also established by the evidence that this draft was protested for want of funds to meet the same, and that the same was returned to the American National Bank at Sapulpa, the paying bank. The note in question was executed to the bank by both plaintiff and defendant to secure the money advanced on the draft. It is further established by the evidence that defendant was compelled to pay and did pay to the Maccabees the note

and mortgage executed by him to the Conservative Loan & Trust Company, the said Maccabees having been an innocent purchaser thereof.

This, in substance, is the evidence offered by defendant to establish his defense that he was merely surety on the note sued on.

At the close of the evidence, plaintiff moved for a directed verdict, which was by the court denied, and the cause submitted to the jury, the trial resulting in a verdict and judgment thereon in favor of the defendant.

Plaintiff appeals, and, among other things, assigns as error the overruling of his motion for a directed verdict. We think this assignment well taken. We fail to see upon what principle of law it can be held that this evidence established that plaintiff was the principal on the note and defendant a surety only.

The note was given to secure the bank for a sum of money advanced by the bank to defendant; the money so advanced was for the sole use and benefit of defendant; plaintiff received no benefit whatever therefrom, but simply signed the note to the bank as surety for defendant. In 21 R. C. L. at page 953, it is said:

"The principal in an obligation is, of course, the one who is originally and primarily liable for the payment of the debt, or the performance of the act for which the surety is bound in an accessory or collateral capacity. The mode of distinguishing between a principal and a surety is by inquiring whether he who claims to stand in the relation of surety did or did not derive a benefit from the contract."

And at page 947, the author defines a "surety" as follows:

"A person who undertakes to pay money, or do any other act, in the event that his principal fails therein, is a surety."

It cannot be gainsaid that the defendant was in reality primarily liable on the note. It was given to secure his debt and for money advanced by the bank to him. The court should have so advised the jury.

It is contended by defendant that the statement made by plaintiff to defendant that if he, defendant, would cancel his application for the loan to the National Building & Loan Association of Pawhuska, he, plaintiff, would see that the Shawnee people would make immediate payment on the loan, amounted to a guaranty on the part of plaintiff, and that this guaranty operates to make

plaintiff the principal on the note. No authority is cited to this effect, and we know of none.

We can conceive of but one theory upon which plaintiff could be held originally and primarily liable, and therefore principal on the note, and that is: Recognizing his liability on the alleged promise made, he signed the same in order to make good such promise. The case, however, was not tried on this theory, nor is there any evidence in the record which would justify a judgment against him on such theory.

We do not here determine what action, if any, defendant may have against plaintiff because of this alleged guaranty, as the same is not here involved; we simply hold that the same does not operate to make plaintiff the principal on the note in question.

Judgment should be reversed and the cause remanded, with directions to enter judgment in favor of plaintiff.

TEEHEE, JEFFREY, HALL, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 3 R. C. L. p. 1138; R. C. L. Perm. Supp. p. 995. See "Bills and Notes," 8 C. J. §29, p. 44, n. 78; §105, p. 69, n. 6; §1362, p. 1053, n. 62.